UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

| | | |
|---|---|---|
| RANGER NATURAL GAS, LLC, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | Civil No. 07-202-ART |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OPINION AND** |
| JAMES D. BURNS, et al., | ) | **ORDER** |
| | ) | |
| Defendants. | ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

On March 23, 2010, the Court denied the defendants' first motion for summary judgment against plaintiff Michael Walker ("Walker") during a teleconference with the parties. R. 181 (Minute Entry Order); R. 185 at 5-12 (transcript of the teleconference). The defendants filed a motion to reconsider the Court's ruling, R. 184, to which the plaintiffs responded, R. 186, and the defendants replied, R. 190.

## BACKGROUND

On December 22, 1998, Walker individually entered two agreements with the defendant, West Virginia-Kentucky Limited Partnership ("WV-KY"). In the first, WV-KY assigned nearly all of its interests in a 250 acre tract of land containing oil and natural gas to Walker. R. 134, Ex. A ("1998 Assignment Agreement") at 1. Walker enjoyed "the exclusive and sole right to be the Operator and Agent of the property" under the agreement, but WV-KY specifically reserved its interest in a single well ("Well No. 1") and the surrounding 500 feet. *Id.* Additionally, Walker and WV-KY entered an Operations Agreement, in which Walker agreed to maintain Well No. 1 in exchange for a monthly operating fee equal to 33.33% of the well's

"production revenue." R. 134, Ex. B ("1998 Operations Agreement") at 1. The contract similarly provided that Walker would have the "sole and exclusive right to provide operating services for the life of the well during the term of this Agreement." *Id.*

On April 2, 2004, WV-KY and Ranger Natural Gas, LLC—a limited partnership Walker formed in 2003, R. 138 at 3 —signed another agreement. It assigned any rights WV-KY "may have or be entitled to pertaining to the 250 acre oil and gas lease" to Ranger and provided that Ranger would enjoy the "sole and exclusive right to be the Agent and Operator of the lease, and to Columbia Meter 806449." R. 134, Ex. E ("2004 Assignment Agreement") at 1. Under the agreement, WV-KY kept an interest in 66.66% of revenue from Well No. 1. *Id.*

The parties dispute the true purpose of the 2004 Assignment Agreement. Walker contends that the agreement was part of a deal in which Walker would improve gas production of Well No. 1, while WV-KY would 1) cover two-thirds of the cost and 2) convey a working interest in the well—which was withheld in the 1998 Assignment Agreement—to Ranger. R. 138, Ex. D ("Walker Aff.") ¶¶ 5, 6; *see* 1998 Assignment Agreement at 1. According to Walker, the 2004 Assignment Agreement "was never intended by either party to supplant the 1998 Assignment or the 1998 Operating Agreement." Walker Aff. ¶ 12. WV-KY claims, however, that the 2004 Assignment Agreement represented a novation, completely setting aside the first two. R. 184 at 5-9.

The plaintiffs have jointly lodged several claims against WV-KY relating to these agreements. R. 70 ¶¶ 63-105. At least some of Walker's claims rest on the assumption that the 1998 agreements remain extant and enforceable. *See, e.g., id.* ¶¶ 63-71, 94-99.

2

The defendants filed their first motion for summary judgment on January 15, 2010. R. 134. There, they sought judgment against the plaintiff Walker on the theory that the 1998 agreements, on which Walker's claims purportedly rely, were completely superceded by the 2004 agreement. R. 134. at 1-2, 9-20. This Court denied the motion at a teleconference on March 23, 2010. R. 181. It explained that the question as to whether there was a novation in 2004 is a question of the parties' intent. R. 185 at 12. Viewed in a light most favorable to the plaintiffs, material factual disputes remain as to whether the 2004 Assignment Agreement was intended to entirely supercede both 1998 agreements. *Id.* Specifically, Walker represented that there was no intent to execute a novation in 2004. And it was unclear from the deposition of David Burns, a defendant and general partner of WV-KY, that he intended the 2004 Assignment Agreement to supercede the others. *Id.* at 5-6. Burns testified, the Court noted, that he merely saw the 2004 agreement as permitting Walker to "change his name" to Ranger. *Id.* Finally, the Court was not convinced that the 1998 Operations Agreement was superceded because there was no 2004 Operations Agreement. *Id.* at 5.

The defendants filed a motion for reconsideration on April 3, 2010. R. 184. There, the defendants first argue that the Court did not take into account an important provision in each of the three contracts at issue: The 1998 Assignment Agreement gave Walker "the sole and exclusive right to be (WV-KY's) Operator and Agent" of the 250 acre tract. *Id.* at 3 (quotations omitted). In turn, the 1998 Operations Agreement gave Walker the "sole and exclusive right to provide operations services" in connection with Well No. 1. *Id.* (quotations omitted). And yet the 2004 Assignment Agreement gave *Ranger* the "sole and exclusive right to be (WV-KY's)

3

Agent and Operator" of the subject property interest. *Id.* (quotations omitted). The defendants claim it is impossible to reconcile these grants of exclusive rights, and so the 2004 Assignment Agreement must be read as a novation. Additionally, the defendants argue that the Court overlooked credibility problems with Walker's affidavit. *Id.* at 1.

## DISCUSSION

The defendants argue that the Court overlooked two points when declining their invitation to declare the 2004 Assignment Agreement a novation of the 1998 agreements and to dismiss Walker's claims based on the 1998 agreements. Specifically, both the 1998 and the 2004 agreements have provisions granting exclusive rights in the subject property interests, first to Walker and then to Ranger. Since the 2004 agreement cannot be reconciled with the earlier agreements, defendants explain, it must be a novation. R. 184 at 3-5. Further, the defendants argue that the Court did not consider the credibility problems with Walker's claim that the 2004 Assignment Agreement was never intended as a novation. *Id.* at 1-2.

To begin, it is unclear that these are valid bases for reconsideration. Courts typically will only exercise their authority to reconsider interlocutory orders when "there is (1) an intervening change of controlling law; (2) new evidence available; or (3) a need to correct a clear error or prevent manifest injustice." *Rodriguez v. Tenn. Laborers Health & Welfare Fund*, 89 F. App'x 949, 959 (6th Cir. 2004). Insofar as this standard is essentially the same as is applied under Fed. R. Civ. P. 59(e), a motion to reconsider an interlocutory order is not an opportunity to "raise arguments which could, and should, have been made before judgment issued." *Sault Ste. Marie Tribe of Chippewa Indians v. Engler*, 146 F.3d 367, 374 (6th Cir. 1998). Regardless, the Court

4

is not convinced that these additional arguments justify granting summary judgment.

"A novation is a substitution of a new contract for an old one which is thereby extinguished." *Kirby v. Scroggins*, 246 S.W.2d 453, 455 (Ky. 1952). Whether a novation has occurred is a question of the parties' intent. *G.D. Deal Holdings, Inc. v. Baker Energy, Inc.*, 501 F.Supp.2d 914, 920 (W.D. Ky. 2007) (citing *In re Cantrill Const. Co.*, 418 F.2d 705, 707 (6th Cir. 1969)).

The defendants may ultimately be correct that the 2004 Assignment Agreement novated the earlier agreement—particularly the 1998 Operations Agreement. Novational intent is implied "whenever the new contract is manifestly in place of or inconsistent with a former one, or which renders a former contract impossible of performance." *Hall v. Wright*, 127 S.W. 516, 519 (Ky. 1910). The terms of the 2004 Assignment Agreement and the 1998 Operations Agreement do appear manifestly inconsistent. The 2004 Assignment Agreement gave Ranger a "sole and exclusive right" to be the "[o]perator" of Well No. 1: The parties agree that the lease referred to in the 2004 Assignment Agreement included an interest in Well No. 1[1], *see* R. 134 ¶ 10, R. 138 at 4 ¶ 10[2], R. 146 at 14, and the agreement explicitly provided that Ranger would have the "sole and exclusive right to be the Agent and Operator of the lease." 2004 Assignment

---

[1] Indeed, the 2004 Assignment Agreement did not exempt Well No. 1 from the assignment, in contrast to the 1998 Assignment Agreement. *Compare* 2004 Assignment Agreement at 1, *with* 1998 Assignment Agreement at 1 ("The Assignor hereby excepts and reserves from this assignment well # 1, permit 25012, a 500 foot radius surrounding the well . . . .").

[2] The plaintiffs say Ranger acquired a "working interest" in the well. As the plaintiffs explain, this is a term of art in the oil industry for "leasehold interest." *See* R. 138 at 4 n.1 (citing *Oxy USA, Inc. v. Colo. Interstate Gas Co.*, 883 P.2d 1216, 1224 (Kan. Ct. App. 1994).

5

Agreement at 1. Yet the 1998 Operations Agreement gave *Walker* a "sole and exclusive right to provide operating services [for Well No. 1] for the life of the well during the term of this agreement." 1998 Operating Agreement at 1. The plaintiffs provide no explanation as to how these two terms can be reconciled. Apparently acknowledging the conflict, they argue that if WV-KY granted the same rights to both Ranger and Walker, that is an issue between Ranger and Walker alone and does not bear on the parties' novational intent. R. 186 at 8. This argument ignores the holding in *Hall* that a novation is implied where a later contract contains terms manifestly inconsistent with the original. 127 S.W. at 519. The plaintiffs also point to parol evidence of the parties' intent regarding the 2004 Assignment Agreement, but it is inappropriate to resort to parol evidence where, as here, the meaning of contractual terms is clear. *Nat'l Equip. Co. v. Heib*, 266 S.W.2d 349, 351 (Ky. 1954) ("It is an elemental rule that parol evidence will not be heard if it would change or vary or contradict contractual terms of a writing when such terms are clear and definite.").

Nevertheless, there remains a material issue of fact which, when viewed in a light most favorable to the plaintiffs, precludes summary judgment. *60 Ivy St. Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987). "A novation is the making of a new contract. Its elements are essentially the same as in the first contract, which are (1) parties; (2) a meeting of the minds; and (3) a consideration." *Daviess Cty. Bank & Trust Co. v. Wright*, 110 S.W. 361, 363 (Ky. 1908). Yet the *defendants* dispute, in an alternative pleading, that the 2004 Assignment Agreement was a valid contract. In their second counterclaim, the defendants assert that "no contract was formed between WV-KY and Ranger" in 2004 because WV-KY's managing partner did not understand

6

a term of the agreement when he signed it in 2004. R. 1, Attach. 2 ¶¶ 41-42. Though it is their burden to "make a showing that it is quite clear what the truth is," *Firtzke v. Shappell*, 468 F.2d 1072, 1077 n.8 (6th Cir. 1972), it remains very unclear whether the defendants have recanted this position. In one filing, defendant contend that they "have never said that the 2004 Assignment didn't come into existence." R. 188 at 26. As best the Court can tell, the defendants are parsing words. While they do not dispute that the agreement "came into existence," they nonetheless still dispute that it was a valid contract. *Compare* R. 146 at 20 (noting in their reply in support of reconsideration that the 2004 Assignment Agreement "came into existence") *with* R. 134 at 16-18 (while the defendants do not contest validity of 2004 Assignment Agreement for this particular motion, they apparently still assert its invalidity elsewhere). Furthermore, the defendants appear not to have amended their counterclaims to remove their challenge to the 2004 Assignment Agreement.[3]

The defendants' answer to this is simply that the Federal Rules of Civil Procedure permit parties to plead inconsistent claims in the alternative. R. 134 at 18 ("[T]here is no problem with WV-KY having pled the existence and non-existence of the 2004 Assignment in Counterclaim Counts I and II, respectively. The law clearly allows alternative and inconsistent pleadings[.]"). It is true that a party will not fail to state a claim for pleading inconsistent theories in the

---

[3] The defendants have filed a motion to withdraw "Counterclaim Count VII." R. 210. In their answer to the second amended complaint and counterclaim against Walker, R. 74 ¶ 115, the defendants re-allege Counterclaim Counts I-IV under the heading of "Counterclaim VII." The Court does not read the motion, however, as withdrawing Counts I-IV, as the motion to withdraw indicates that Counterclaim VII is exclusively about the 1998 Assignment Agreement. R. 210 at 1.

alternative. *See, e.g., Phoenix Solutions, Inc. v. Sony Electronics, Inc.*, No. C-07-2112, 2007 WL 4287546, at *2-3 (N.D. Cal. Dec. 6, 2007). But the defendants cite no authority for the proposition that this Court can ignore their inconsistent factual allegations for purposes of determining whether a material question of fact remains as to the validity of the 2004 Assignment Agreement. *See* R. 134 at 16-18. As a result, the Court cannot enter judgment against Walker on the theory that the 2004 Assignment Agreement was a valid agreement that novated the 1998 agreements, especially when the defendants themselves continue to deny that the 2004 Assignment Agreement ever came into existence.

## CONCLUSION

Accordingly, it is **ORDERED** that the defendants' motion for reconsideration, R. 184, is **DENIED**.

This the 21st day of June, 2010.

Signed By:
*Amul R. Thapar* AT
United States District Judge