UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

| | | |
|---|---|---|
| RANGER NATURAL GAS, LLC, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | Civil No. 07-202-ART |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OPINION AND** |
| JAMES D. BURNS, et al., | ) | **ORDER** |
| | ) | |
| Defendants. | ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

On March 4, 2010, the defendant, West Virginia-Kentucky Limited Partnership ("WV-KY"), moved for summary judgment on its first counterclaim. *See* R. 163. WV-KY contends that it was entitled to rescind a 2004 agreement concerning revenue from a gas well and, as a result, receive restitution from one of the plaintiffs, Ranger Natural Gas, LLC ("Ranger"). R. 163, Attach. 1 at 4-10. But genuine issues of material fact remain as to whether the defendant is entitled to this relief. Accordingly, this motion will be denied.

Additionally, WV-KY also moved for sanctions in its motion for summary judgment. R. 163, Attach. 1 at 11-13. The plaintiffs moved to strike portions of the defendants' motion for sanctions. *See* R. 192. For the reasons provided below, these requests will also both be denied.

### BACKGROUND

The facts of this case were presented in greater detail in this Court's opinion denying reconsideration of the defendants' first motion for summary judgment, R. 224. For purposes of this decision, the relevant facts are as follows:

On April 2, 2004, WV-KY and the plaintiff, Ranger, signed a written agreement assigning WV-KY's interests in a 250-acre oil and gas lease to Ranger. R. 134, Ex. E ("2004 Assignment Agreement") at 1. In the assignment, WV-KY reserved an interest in 66.6666% of the revenue from a single well included in the lease ("Well No. 1"). *Id.* The circumstances surrounding formation of this agreement are unclear. Some evidence suggests that the 2004 Assignment Agreement was part of a broader deal in which the plaintiffs would improve gas production of Well No. 1, while WV-KY would: 1) cover two-thirds of the cost and 2) convey a working interest in the well to Ranger through the Assignment Agreement. *See* R. 138, Ex. D ("Walker Aff.") at ¶¶ 5-6; R. 179, Attach. 8 ("Walker Dep., Part 8") at 234-236; R. 183, Attach. 1 at 17. There is nothing written into the 2004 Assignment Agreement, however, about deepening Well No. 1 or WV-KY covering any of the cost. Walker Dep., Part 8 at 235.

Deepened or not, Well No. 1 produced revenue during the term of the 2004 Assignment Agreement, but Ranger withheld WV-KY's share. R. 183 at 5-6, 19. It WV-KY's first counterclaim—the subject of this motion—the defendant asks this Court to hold that it was entitled to rescind[1] the 2004 Assignment Agreement for non-payment and order restitution. R.

---

[1] WV-KY suggests it has already rescinded the 2004 agreement itself in an April 10, 2007, letter notifying Ranger that it considered the contract to be cancelled. *See,*, R. 163, Attach 1 at 4; R. 183, Attach. 5; R. 188 at 13 ("They falsely assume that Rescission hasn't occurred."). But the Court is not bound to view the contract as already rescinded. "It is the well-settled rule that before a contract can be terminated by the parties thereto, there must be an offer or declared intention to terminate it by one of the parties and such offer accepted by the other party, unless the contract expressly provides that either party may terminate it at will." *Inter Southern Life Ins. Co. v. Esenbock*, 76 S.W.2d 902, 903 (Ky. 1934). Here, there is no indication that Ranger accepted the rescission—in fact, it disputes the rescission's validity. R. 70 at 9; R. 183, Attach. 1 at 8. Nor is there anything in the 2004 Assignment Agreement to suggest the parties can unilaterally rescind this contract. *See* 2004 Assignment Agreement. As a result, it is for this

2

163, Attach. 1 at 4-10.

## STANDARD OF REVIEW

Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record], which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Once the moving party meets its burden, the burden shifts and the non-moving party must "set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2). There must be evidence on which the jury could reasonably find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). In considering these motions for summary judgment, the Court must view the facts and draw all inferences therefrom in a light most favorable to the non-moving party. *60 Ivy St. Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987) (citations omitted).

## DISCUSSION OF MOTION FOR SUMMARY JUDGMENT

WV-KY has failed to demonstrate, as a matter of law, that it is entitled to the relief requested. "[R]escission and restitution" is an equitable remedy. *Hill's Adm'r v. Spalding's Ex'r*, 1864 WL 2542, at *3 (Ky. Oct. 3, 1864) ("rescission and restitution" is a "suit in equity."). In fact, "cancellation of an executed contract is an exertion of the most extraordinary power of a

---

Court to decide whether rescission is appropriate.

court of equity, which ought not to be exercised except in a clear case[.]" *Cole v. Young*, 181 S.W. 177, 178 (Ky. 1916). But this is not a clear case; there are still genuine issues of material fact.

To begin, a material question of fact remains as to whether WV-KY bears any blame for Ranger's non-payment. To secure equitable rescission of this agreement on the theory that Ranger has materially breached, WV-KY must "show that [it] is free from fault in relation to the obligation which [it] claims the adverse party failed to perform." *Schmidt v. Schmidt*, 343 S.W.2d 817, 819 (Ky. 1961) (citations omitted). Here, Ranger's sole managing member, Michael Walker, testified that Ranger withheld payment under the 2004 agreement because WV-KY declined to meet its obligation, under a correlative agreement, to pay a portion of the cost to improve Well No. 1. R. 179, Attach. 9 ("Walker Dep., Part 9") at 273-74. Insofar as these two agreements were connected as part of the same transaction,[2] WV-KY may be partly at fault for Ranger's failure to meet its obligation under the 2004 agreement. Indeed, Walker described them as part of the same transaction.[3] Walker Dep., Part 8 at 234-36.

---

[2] The *Schmidt* court indicated that the rule obligating parties seeking rescission to demonstrate that they are free from fault flows from the doctrine of unclean hands. 343 S.W.2d at 819 ("Where the parties are in pari delicto a court of equity will not grant relief to either."); *see also Eline Realty Co. v. Foeman*, 252 S.W.2d 15, 19 (Ky. 1952) (connecting the rule prohibiting equitable relief where both parties are in pari delicto to the doctrine of unclean hands."). In turn, the doctrine of unclean hands applies when the party seeking relief misbehaves while participating in a "transaction" connected with the matter in litigation. *Id.* at 19 ("The transaction with respect to which there was misconduct must be connected with the matter in litigation in order for the doctrine of unclean hands to apply." (citations omitted))

[3] Ranger does describe these two agreements as "new and entirely different," but it appears to mean that the two agreements were "entirely different" from agreements made in 1998 between Walker and WV-KY. R. 183 at 17-18.

4

WV-KY argues that its alleged failure to pay a share of the cost to improve the well is no obstacle to securing summary judgment for two reasons: First, the plaintiffs have not included this argument in their pleadings and should not be allowed to assert it now. R. 188 at 2, 4. Second, the evidence demonstrates conclusively that there was neither an agreement obligating WV-KY to pay the cost of deepening Well No. 1 nor any actual effort by Walker to deepen the well. R. 188 at 24 (no agreement); R. 163, Attach. 1 at 6 ("The undisputed facts show that Ranger did not deepen Well No. 1), 7-10. Neither of these arguments is, at this stage, convincing.

Contrary to WV-KY's assertion, Ranger did not have to specifically plead that WV-KY's failure to pay costs under the 2004 oral agreement bars equitable relief for breach of the 2004 Assignment agreement. The Federal Rules do not require a defendant to specifically plead a general, as opposed to affirmative, defense. *Ford Motor Co. v. Transp. Indem. Co.*, 795 F.2d 538, 546 (6th Cir. 1986) (distinguishing between affirmative and non-affirmative defenses for purposes of the affirmative pleading requirement in Fed. R. Civ. P. 8); *see also In re Sterten*, 546 F.3d 278, 283-87 (3d Cir. 2008) (non-affirmative defense does not need to be plead specifically (citing Fed. R. Civ. P. 8)). Here, the defense that WV-KY bears some fault for non-payment under the 2004 agreement, R. 183 at 28, does not appear to be an affirmative one. Kentucky law places the onus on the party seeking rescission to "show that he or she was free from fault." *Schmidt*, 343 S.W.2d at 819; *see also* 4 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1271 (3d ed. 2010) (noting that some courts have concluded that defenses need not be pled affirmatively if the underlying issue "arises by logical

5

inference from the well-pleaded allegations in the plaintiff's complaint," which includes issues "considered a necessary part of the plaintiff's claim for rescission" (footnote omitted)) (also noting that federal courts can look to state court decisions to determine "whether certain defensive matters should be plead affirmatively); *see also Morris v. Prefabrication Eng'g Co.*, 160 F.2d 779, 781-82 (5th Cir. 1947) ("The defendant did not have specifically to plead the failure to return the goods shipped under the contracts, such return being a necessary part of the plaintiffs' case to enforce rescission."). If it is not an affirmative defense, the issue was preserved by Ranger's general denial in its answer. R. 9 ¶ 5 (denying obligation to pay); *In re Sterten*, 546 F.3d at 287 (non-affirmative defenses "can be put in play by a general denial.").

But even if it was an affirmative defense, Ranger could still assert it now. Parties may assert affirmative defenses for the first time at the summary judgment stage so long as there is no "surprise or unfair prejudice"—particularly where, as here, the parties have had the opportunity to brief the merits of the defense. *Smith v. Sushka*, 117 F.3d 965, 969 (6th Cir. 1997) (citations omitted). WV-KY has not explained how it was surprised or prejudiced unfairly.

The Court also cannot agree the evidence is conclusive, as WV-KY asserts. WV-KY contends that the entire enterprise was a "fairy tale[]," R. 163, Attach. 1 at 6, because: (1) Ranger never secured a permit to deepen the well, and (2) as WV-KY's experts concluded, the project would have been futile. *Id.* at 6-9. It adds that Walker's justification for deepening the well, that there was a decline in production, was untrue, and the WV-KY representative who allegedly agreed to help finance the well improvements flatly denies it. *Id.* at 11-12. While all of these things may ultimately lead the trier of fact to conclude there was no such agreement, there

6

remains a material factual dispute. Walker's deposition testimony describing the process of improving the well is not insubstantial. *See* Walker Dep., Part 8 at 241-45. And much of the evidence WV-KY relies upon to dispute the existence of the agreement—particularly the expert testimony that the plaintiffs' deepening project was unlikely to have increased gas production—suggests that the project would have been imprudent, but not necessarily that it never occurred. Viewing the evidence in the light most favorable to the plaintiffs, *see 60 Ivy St. Corp.*, 822 F.2d at 1435, material questions of fact remain as to the existence of the agreement to deepen the well and whether Walker ever deepened the well.

Furthermore, WV-KY has not addressed two other requirements for granting rescission. It has not explained why a legal, rather than equitable, remedy for breach of the 2004 contract would be insufficient. *See Sheeran v. Irvin*, 19 S.W.2d 976, 979 (Ky. 1929) ("Neither cancellation nor rescission may be obtained where adequate relief may be given at law."); *see also Brownsville Auto Co. v. Peaslee Gaulbert Co.*, 46 S.W.2d 1088, 1089 (Ky. 1932) ("Such a proceeding would violate a fundamental principle of equity jurisprudence, which precludes a resort to equity when the plaintiff has a plain, adequate, efficient, and appropriate legal remedy." (citations omitted)). And it has also not demonstrated conclusively that rescission of the 2004 agreement would return the parties to the status quo ante. *Black Motor Co. v. Green*, 79 S.W.2d 409, 411 (Ky. 1934) (citations omitted). If Ranger did improve production of Well No. 1, returning Ranger's interest in the well to WV-KY may impermissibly leave WV-KY "materially enriched." *Id.* (when restoring litigants to original position "neither party [should] be either materially enriched or impoverished."). WV-KY would enjoy a 100% revenue interest in a well

7

that is more productive than it was before execution of the agreement.

## DISCUSSION OF MOTIONS FOR SANCTIONS AND TO STRIKE

WV-KY also moved to sanction Ranger for submitting a bad faith affidavit under Fed. R. Civ. P. 56(g). R. 163, Attach. 1 at 11-13. Specifically, WV-KY argues that Walker's affidavit, with its claims about the agreement to deepen Well No. 1, has been conclusively rebutted by the evidence on the record. *Id.* In the affidavit, Walker claims that he and James Burns from WV-KY agreed to improve production of Well No. 1, with WV-KY paying a portion of the cost. R. 183, Attach. 4. He also asserts that he did, in fact, undertake to deepen the well. *Id.* As explained above, the Court is not convinced that Walker's claims are patently false. The depth of Walker's deposition testimony on the agreement and process of deepening the well presents a material issue of fact as to whether he is telling the truth. Accordingly, the defendants' motion for sanctions will be denied, and the plaintiffs' motion to strike specific allegations in that motion, R. 192, will be denied as moot.

## CONCLUSION

For these reasons, it is **ORDERED** as follows:

(1)  WV-KY's motion for summary judgment and for sanctions, R. 163, is **DENIED**;

(2)  The plaintiffs' motion to strike, R. 192, is **DENIED AS MOOT**.

This the 25th day of June, 2010.

Signed By:
*Amul R. Thapar*  AT
United States District Judge